EASTERN DIST.
March, 1839.

REYNAUD'S H'RS.
vs.
PEYTAVIN'S
EXECUTORS.

====

REYNAUD'S HEIRS vs. PEYTAVIN'S EXECUTORS.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ASCENSION.

Where the heirs of a deceased partner, who are all of age, renew the partnership with the surviving partner, and suffer the partnership property and effects to remain during five years, under his exclusive control and management, it will be presumed they were satisfied with his diligence, and they cannot claim from his executors *profits that he might have made*, on the ground of negligence or mismanagement.

In a universal partnership, under the Spanish law, the personal and household expenses of the individual partners, were chargeable to the firm, however unequal they might be in amount.

This case comes up on an opposition made by the heirs of the deceased Louis M. Reynaud, to the account and tableau of distribution, filed by the executors of Antoine Peytavin, deceased. The executors filed their tableau, and gave notice to all the creditors of A. Peytavin, and of the partnership lately existing between Louis M. Reynaud and A. Peytavin, and to all persons interested, to show cause why the said account and tableau should not be homologated.

The heirs set up various objections to the executors' account, and conclude, that the partnership which existed between their ancestor and the late A. Peytavin, is indebted to them as follows:

To Songy Reynaud in the sum of nine thousand and forty-three dollars on account.

To Felicite D. Reynaud and the other heirs, a large sum not specified. That the mass of the partnership should be settled. 1. By taking the price of the sale made of the

16          VOL. XIII.

Eastern Dist.
March, 1839.

REYNAUD'S H'RS.
vs.
PEYTAVIN'S
EXECUTORS.

partnership property in 1833, with interest on each instalment at ten per cent. per annum.　2. The debts due to the partnership, whether by the partners or others.　3. The amount the heirs may have to collate.　From these, deductions are to be made.　1. Of debts of the partnership paid by Peytavin.　2. Debts due by the partnership to the partners.　3. Bad debts.

The opponents then pray that the tableau be corrected by crediting the partnership.　1. With the price of the partnership property sold in 1833, at the time each instalment became due.　2. With ten per cent. per annum interest on each instalment, &c.　3. With twenty thousand dollars due to the partnership by A. Peytavin, for his personal and household expenses, from the year 1828 until 1833.　4. With the further sum of one hundred and forty thousand dollars, being the amount of the net proceeds of crops not accounted for.

The opponents further pray that the executors be ordered to pay them in their quality of creditors, the several sums that may be found due them, on a definitive settlement, &c.

The material facts of this case are stated in the opinion of the court, which follows.

The judge of probates, after hearing the evidence and the arguments of counsel of the respective parties, overruled the opposition, and the plaintiffs in said opposition appealed.

*M. Taylor,* for the opponents.

*J. Seghers, contra.*

*Rost, J.,* delivered the opinion of the court.

This is an opposition of the heirs of a partner to the account of the partnership, filed by the executors of the other.　The material facts of the case are as follows :

In 1806, Jean Reynaud and A. Peytavin formed, by notarial act, an universal partnership, which was to continue for five years ; their property consisted of houses, plantations, slaves, ships, credits, merchandize, &c.　Jean Reynaud died

in 1807; and in 1821, his widow and A. Peytavin, acknow-
ledged by a notarial act, that the partnership had continued
by mutual consent between them, and agreed that it should
thereafter continue, until it pleased one of the partners to
dissolve it. A statement was made of all the property,
rights, and credits of the firm. The last partnership was
dissolved by the death of Madam Reynaud, in 1828; it was
renewed by the present plaintiffs in opposition, for one year,
and afterwards the partnership property was left by them
under the management and control of A. Peytavin, until the
beginning of 1833. An inventory was then made of it in
presence of the parties interested, and appears to have been
considered by them as including all the property, rights and
credits of the firm; it included property acquired since 1821,
with the profits made, and embraced all that A. Peytavin
possessed at that time.

The property inventoried was afterwards sold on a credit
of one, two and three years, to effect a partition, and the
instalments if not paid at maturity, were to bear interest at
the rate of ten per cent. per annum, after they became due
until paid. At that sale, A. Peytavin purchased to a large
amount, and died shortly afterwards. The property was
sold a second time by his executors, who, after receiving the
proceeds, have filed a general account of their administration,
including an account of the succession with the firm of Rey-
naud & Peytavin. The executors, in that account, have
charged the succession with the proceeds of the sale of the
partnership property, reduced to cash, at the date of said
sale, by a discount at the rate of eight per cent. per annum,
upon the different instalments.

Songy Reynaud, one of the plaintiffs in opposition, had a
private account against the succession, which had been pre-
viously accepted by the executors, and admitted without
opposition by the attorney of absent heirs. The executors
have placed him in the tableau for a sum less than the
amount of that account.

The plaintiffs in opposition being the children and heirs of
Jean Reynaud and his wife, opposed the homologation of the

EASTERN DIST. account, and ask that it be amended by crediting the part-
*March*, 1839. nership with the following sums:

REYNAUD'S H'RS    I. The whole amount of the property sold in 1833.
*vs.*
PEYTAVIN'S        II. Interest at the rate of ten per cent. per annum, from
EXECUTORS. the maturity of each instalment, till the final settlement of
the succession, credit being given for the partnership debts
paid by the testator.

III. The sum of twenty thousand dollars for the personal
and household expenses of A. Peytavin, while he adminis-
tered the affairs of the partnership.

IV. One hundred and forty thousand dollars, which they
supposed ought to have been the value of the crops, made
on the plantations of the firm, if they had been well
managed.

V. Songy Reynaud further asks to be placed on the
tableau for the whole amount of his account.

The Court of Probates after hearing the parties, overruled
the opposition, and the heirs of Jean Reynaud appealed.

The first and most important question in this case is, whe-
ther A. Peytavin's executors are bound to account to the
plaintiffs in opposition, for the crops which might have been
made on the partnership plantations, and for the personal
Where the heirs expenses of the testator.    One of the executors having been
of   a   deceas-
ed partner, who the factor of the testator since 1824, an account is produced
are all of age,
renew the part- by the firm to which he belongs, showing the proceeds of the
nership with the crops made upon the partnership property from 1824 to 1833,
surviving part-
ner, and suffer and also the expenses incurred during that time; the
the partnership
property and ef- balance found in that account is charged to the succession,
fects to remain
during five years and the plaintiffs in opposition do not object to it: they do
under his exclu- not pretend to charge A. Peytavin with fraud, but only with
sive control and
management, it negligence.    Whatever might have been the nature of the
will be presum-
ed they were sa- partnership, the fact, that after the death of their mother, the
tisfied with his
diligence,   and plaintiffs, being all of age, renewed it, and suffered the pro-
they     cannot perty to remain, during five years, under the exclusive
claim from his
executors, *profits* management and control of the testator, sufficiently proves,
*that   he   might* that they were satisfied with the degree of diligence which
*have   made,* on
the   ground of he used, and leaves them without the shadow of a right to
negligence    or
mismanagement claim damages at this time, under an universal partnership,

This right could not have existed, for that kind of association, operated between the partners a confusion of property, incompatible with strict accountability. All the private expenses, no matter how unequal they might be, were paid out of the common fund, and at the dissolution of the partship, the property and profits that remained were divided equally between the partners, without taking into consideration that one had gained, wasted, or consumed more than another. *Curia Philipica verbo Compagneros, articles* 5, 6, 7, 8, 9, *Partida* 5, *title* 10, *l.* 2, 5, 6, 7. *Pothier Contract de Société, article* 37.

EASTERN DIST.
*March*, 1839.

REYNAUD'S H'RS.
*vs.*
PEYTAVIN'S
EXECUTORS.

In an universal partnership, under the Spanish law, the personal and household expenses of the individual partners were chargeable to the firm, however unequal they might be in amount.

The code of 1808, made some changes in those laws, but they do not affect the present case; and the claims of the plaintiffs for the profits which might have been made, and for the personal and household expenses of the testator cannot be sustained.

The manner of stating the account is unusual and singular, but the plaintiffs in opposition have failed to show that it was injurious to them. By the act of partnership between Madame Reynaud and the testator, the latter bound himself that at the dissolution of the firm, the share of each of the plaintiffs should, under no circumstances, be less than four thousand dollars, and that he would make up the deficiency. Their share, by the amount rendered is only one thousand and seventy-eight dollars, and seventy-six cents, and the balance up to the sum of $4000, is charged to the testator and credited to them. If the amount was amended as they desire, their share would be less than what they receive.

The demand of Songy Reynaud to be placed on the tableau for the whole amount of his private account, appears to us well founded. If the acknowledgment of the executors, and the admission of the attorney of absent heirs were made in error, that fact ought to have been alleged and shown on the trial of the opposition. The plaintiff may have had legal evidence of every item of his account, but he was not bound to produce it as long as the acknowledgments of the executors stood. The other parties have shown no error to their prejudice.

EASTERN DIST.    It is, therefore, ordered, adjudged and decreed, that the
March, 1839.   judgment of the Court of Probates be avoided and reversed;
HIRIART      that Songy Reynaud be placed upon the tableau, for the sum
vs.        of nine thousand and forty-three dollars and eighty-two
ROGER ET AL.   cents, instead of six thousand six hundred and seventy-nine
dollars and six cents; and that the amount, as amended,
be homologated and approved, and the funds distributed in
conformity therewith.    It is further ordered, adjudged and
decreed, that the defendants and appellees pay the costs in
both courts.