## Songy Reynaud *v.* His Creditors.

A claim is sufficiently liquidated to be susceptible of compensation, when its correctness is admitted by the debtor.

Appeal from the Parish Court of New Orleans, *Maurian*, J.

*C. Janin*, for the appellants.

*J. Seghers*, for the opponent.

Morphy, J. This is an opposition to a tableau of distribution

filed in this case, from which it appears, that there is nothing coming to the ordinary creditors; the balance remaining, after the payment of the privileged debts and law charges, being covered by the legal mortgage of the insolvent's wife. The opponent, Valery Landry, as one of the testamentary executors of the late Antoine Peytavin, claims on behalf of the estate, and according to an account annexed to his opposition, $3952 41, with the vendor's privilege on $2205, the price of the slave Celeste and her children, bought by the insolvent at the sale of the succession property. The Judge allowed the privilege claimed, to the extent of $1102 50, the second instalment of the price of the slaves, together with interest on said sum, at the rate of ten per cent per annum, from the 15th of January, 1838. The syndic, and the children of the insolvent have appealed.

There appears to be no dispute as to the correctness of the account, in relation to the sums charged, or credited to the insolvent; but it is urged, on the part of the appellants, that the price of these slaves was paid by, and compensated with other sums due to the insolvent by the estate of Peytavin, and that there is no privilege for whatever balance may remain due to the said estate.

The record shows, that in 1833, Songy Reynaud was entitled to claim $5333 33, from the estate of Antoine Peytavin, as the sole liquidator of the partnership which had existed between him and Jean Reynaud, and which had been continued between him and the heirs of the said Jean Reynaud; and that he was, moreover, a creditor of the deceased for the sum of $9043 82, making together, that of $14,377 15. That, in December, 1836, at the sale of the property of the estate of Peytavin, Songy Reynaud purchased the slave Joseph for $1379, and Celeste and her children for $2205, payable, one-half on the 15th of January, 1837, and one-half on the 15th of January, 1838, but never delivered his notes according to the terms of the adjudication. On the 1st of June, 1836, Songy Reynaud drew on Valery Landry a draft in favor of C. Squier & Co., for $2188 36, with interest at the rate of eight per cent per annum, until paid. This draft was accepted by the executor, to be paid out of the funds which might be lawfully coming to the drawer, who, besides, received money from

the executors, from time to time, and gave his receipts, which mention that the payments were made in deduction of his claims against the estate.    From a close examination of the sums acknowledged to be due by Songy Reynaud to the estate of Peytavin, on an account rendered contradictorily with him, of those since paid to him, or for his account by the executors, as well as of the portions of the price of the slaves which had become due before the 15th of January, 1838; we are satisfied, that even if compensation could take place, the whole claim of Songy Reynaud against the estate had been already extinguished by compensation, when the second instalment of the slaves fell due ; and that, therefore, it remains unpaid, and is included in the balance claimed.    The counsel for the appellants has contended, that the sum of $14,377 15, due to the insolvent by the estate of Antoine Peytavin, became liquidated, and susceptible of compensation only in 1839, when the account filed by the executors was finally homologated by a decree of the Supreme Court; that this happened long after the maturity of all the instalments of the price of the slaves, which were thus extinguished by compensation.    We do not think so.    The account of the executors, filed on the 9th of May, 1837, acknowledged the insolvent's claim as a partner, for $5333 33 ; and, as a creditor of the succession, he was therein set down for $6679 06.    The main object of Songy Reynaud's opposition to this account, was to have the latter sum carried to $9043 82, and his opposition was sustained, on the ground that his right to this sum had been admitted by the executors, who had acknowledged and approved his account, and that it was not shown or pretended that such acknowledgment had been made through error.    See 13 La, 121.    The precise date of this acknowledgment does not appear from the record ; but in a petition presented by the insolvent, Songy Reynaud, to the Court of Probates, on the 16th of August, 1836, it is alleged to have been made before that time.    A claim is sufficiently liquidated to be susceptible of compensation, when its correctness is admitted by the debtor.    The judgment of the Supreme Court did not liquidate the claim, but only declared the acknowledgment made by the executors binding on them.    All the other sums set down in the account, as due to, or by the estate, and which were not em-

braced in the opposition, became liquidated by the acknowledgment therein made of them, or, at least, by the homologation of the account, which took place on the 29th of May, 1837. As to the check, or order of Songy Reynaud, in favor of Squier & Co., which, it is said, was paid only in 1839; it is clear, that from the 16th of June, 1836, when it was accepted by the executors, to be paid out of the funds coming to the insolvent, the amount for which it was drawn could no longer be considered as money in the hands of the executors, belonging to the insolvent. From the appropriation of this sum, and the receipts given by the insolvent for the money paid to him from time to time, it is apparent, that he did not intend to off-set his claim against the instalments of the price not yet due; for, had the whole price of the slaves been first deducted, there would not have remained a balance sufficient to have paid the sums thus received.

*Judgment affirmed.*